THE STATE OF CONNECTICUT vs. WILLIAM K. FAATZ.

Second Judicial District, Norwich, April Term, 1910.
HALL, C. J., PRENTICE, THAYER, RORABACK and ROBINSON, JS.

Penal statutes are to be construed strictly as against the accused and
    liberally in his favor.
Chapter 249 of the Public Acts of 1907 provides that no person shall
    engage in "the practice of dentistry" without a license from the
    dental commissioners, and imposes a penalty for its violation.
    *Held* that the performance of one or more dental operations was by
    no means the same thing as "engaging in the practice of dentistry";
    and therefore an information charging the defendant, a student in
    the office of a licensed practitioner, with having performed one or
    more of such operations without a license, did not set forth the
    statutory offense, and was demurrable for that reason.
In the construction of a statute the question is, not what the legislature
    actually meant to say, but what is the meaning of what it did say.
An appeal should be taken from the refusal of the trial court to set aside.
    the verdict as against the evidence, if it is intended to urge such re-
    fusal as one of the alleged errors.

Argued April 27th—decided June 14th, 1910.

INFORMATION for a violation of the law relating to
the practice of dentistry, brought to the Criminal
Court of Common Pleas in New London County and
tried to the jury before *Waller, J.;* verdict and judgment
of guilty, and appeal by the accused. *Error, judgment
reversed and cause remanded.*

There were originally two counts in the information,
but a *nolle* was entered as to the second count. The
first count only is here involved. This count charged
that the defendant did, during the week ending on the
3d day of October, 1908, at Norwich, "perform dental
operations on patients, in the office of a licensed or
registered dentist, without a license from the dental
commissioners of the State of Connecticut."

The defendant first demurred to the information, one ground of demurrer being that the information did not charge any offense under the Act in question. The court overruled this demurrer. The defendant then pleaded not guilty, and the jury found him guilty as charged in the information. He moved in arrest of judgment, and this was denied. The court sentenced him to pay a fine of $25 and costs. The defendant appealed from this judgment, claiming error in overruling the demurrer, in denying the motion in arrest, in the charge of the court, and in the court's refusal to charge as requested by the defendant.

The defendant was a young man employed in the office of Dr. Frederick C. Jackson, then a licensed dentist in the city of Norwich. One day he placed some cotton in the tooth of a man named Lavalle, and on a later day he filled this tooth. For this service a fee of $1.50 was collected by the defendant, not for himself, but for Dr. Jackson, the proprietor of the office. The defendant held no license from the dental commissioners, and it was the claim of the State that these acts constituted a crime under the statute in question.

The defendant's counsel requested the court to instruct the jury that the information did not charge the defendant with the offense of engaging in the practice of dentistry without a license, under the provisions of chapter 249 of the Public Acts of 1907, and that the performing of dental operations by the defendant without a license, in the office of a licensed dentist, was not an offense under the provisions of chapter 134 of the Public Acts of 1905 as amended by chapter 249 of the Public Acts of 1907, or under any law of this State, and that such facts, if proved, would constitute no violation of the law.

The court did not so charge, but instructed the jury that "a person who performs any operation or furnishes

any treatment for a disease of the human teeth, or jaws, comes within the prohibition of the statute. It is not necessary that a person should engage continuously in the practice of dentistry, for any given time— one treatment or operation is prohibited just as much as a continued practice, including several treatments and operations. Neither is it necessary that a person should have an office, or any regular place of business, or advertise, in any particular manner, as a practicing dentist; the performance of one operation, or the giving of one treatment, is under the law . . . an offense when the act is done by a person who is not licensed or registered by the dental commissioners."

The defendant claimed that this and some other parts of the charge holding doctrine akin to this, were erroneous.

*Charles F. Thayer* and *Donald G. Perkins*, for the appellant (the accused).

*Charles B. Whittlesey*, Prosecuting Attorney, for the appellee (the State).

ROBINSON, J. The questions raised on the demurrer, the motion in arrest, and the charge of the court, we will examine together, as they all involve the construction of these Public Acts. We are here dealing with a penal statute, not a remedial law, and as far back as 1821 this court held that penal statutes must be strictly construed, or, "more correctly it may be said, that such laws are to be expounded strictly against an offender, and liberally in his favor. This can only be accomplished, by giving to them a literal construction, so far as they operate penally; or at most, by deducing the intention of the legislature from the words of the act. . . . In extension of the letter of the law, nothing

may be assumed by implication; nor may the mischief *intended* to be prevented or redressed, as against the offender, be regarded in its construction. It was the object of the principle, to establish a certain rule, by conformity to which mankind should be safe, and the discretion of the judge limited. How much this must contribute to the security and enjoyment of the citizen, is too palpably obvious to require illustration." *Daggett* v. *State*, 4 Conn. 60, 63.

The Act under which this information is brought provides that "no person shall engage in the practice of dentistry unless such person shall have first obtained a license" from the dental commissioners; and further, that "the unlawful practice of dentistry for each week shall be a separate offense."

A "dentist" is one whose business is to clean, extract, or repair natural teeth, and to make and to insert artificial ones. "Dentistry" is the art or profession of a dentist. The "practice of dentistry," then, is the practice of the art or profession of a dentist. Engaging in the practice of dentistry without a license is made a crime by this law.

This information does not charge the defendant with the offense of "engaging in the practice of dentistry without a license." Quite evidently the public prosecutor did not intend so to charge. If he had, he would undoubtedly have followed the language of the statute. But he does charge that the defendant performed dental operations on patients, in the office of a licensed dentist, without a license. The theory of this prosecution is that an unregistered assistant or student of a licensed dentist cannot perform a single dental operation without becoming liable under this Act, and that the Act forbids this. And this appears to have been the attitude of the trial court in construing this Act. This view is erroneous. Such dental operations are not in

terms forbidden, and the language of the Act cannot be extended by implication. *State* v. *McMahon,* 53 Conn. 407, 5 Atl. 596.

This law is not to be construed as if it were a remedial law. Were we to adopt the contention of the State, the court would be indulging, not in interpretation, but in judicial legislation. And in charging the offense, either the language of the statute should have been used, or apt language should have been employed describing the offense in such words as to embrace, in legal effect, the offense prohibited by the statute.

This information failed in this respect. We cannot endorse the position that performing a dental operation is the same thing as engaging in the practice of dentistry. This appears to have been the view of the trial court. In the charge to the jury the court makes no distinction between "engaging in the practice of dentistry" and "performing a single dental operation." It treats them as one and the same thing. There was error in this, and consequent harm to the defendant. "To engage in the practice of dentistry" means vastly more than is embraced in a charge of "performing a dental operation." The latter might easily be done without the operator's "engaging in the practice of dentistry" in the sense used in the statute. And a man might engage in the practice of dentistry before he had performed a single dental operation. "Engaging in the practice of dentistry" and "performing a dental operation" cannot be the same thing, if we are to attach to these expressions, as we must, the meaning which standard lexicographers give to the words composing the phrase used in the statute as descriptive of this crime. It is utterly impossible that the charge of "performing a dental operation, or two operations," embraces, in legal effect or grammatical sense, the offense prohibited in this Act. A blacksmith or a joiner might pull an aching

tooth for a neighbor, but we could hardly say he was engaged in the practice of dentistry, although we could say with entire accuracy that he had performed a dental operation. A mother who saturates a bit of cotton with camphor and crowds it into the hollow of an aching tooth of her child is performing a dental operation, but no one could properly say that she was engaged in the practice of dentistry within the meaning of this Act, and therefore liable to be arrested and prosecuted as a criminal for this motherly act.

A young man may be preparing to enter the dental profession, but he cannot, within the meaning of the statute, be said "to engage in the practice of dentistry" until he embarks in it, until he holds himself out as a dentist, either by a series of continuous acts, covert or open, or by advertising himself in some way as a dentist or as a doctor of dental surgery. If he hold himself out to the public as a duly qualified dentist, embarked in the profession, and offers to practice as such, this would be engaging in the practice of dentistry within the true sense and meaning of this Act, even though his first patient had not yet called.

Men cannot now lawfully do these things until they are duly licensed. If they do, they subject themselves to a penalty. This Act is intended to protect the dental profession from ignorant and incompetent practitioners, as well as to protect the public against the same kind of ignorance and incompetence in men setting themselves up as dentists, or, in other words, "engaging in the practice of dentistry."

The statute is a benign one, and its purpose is good, and, if properly and legitimately enforced, it is a useful one; but it should not be strained by construction to include terms and restrictions not intended by the legislature, as that intent is manifested by the language used. The question was not what the legislature actu-

ally meant to say, but what is the meaning of what the legislature has said. *Lee Bros. Furniture Co.* v. *Cram,* 63 Conn. 433, 438, 28 Atl. 540. If the legislature intended to prohibit and punish the performing of any dental operation, it failed to express that intention in any way by which it can be known to the court. Such an intent is not to be found in the words employed in the Act. "A legislative intention not expressed in some manner has no legal existence. 'We are not at liberty to speculate upon any supposed actual intention of the legislature. We are not at liberty to imagine an intent and bind the letter of the act to that intent; much less can we indulge in the license of striking out and inserting and remodeling with the view of making the letter express an intent which the statute in its native form does not express.' " *Lee Bros. Furniture Co.* v. *Cram,* 63 Conn. 433, 438, 28 Atl. 540.

Had the legislature really intended to make it a crime to perform any dental operation without a license, it could and would have found language to express that intention with clearness and certainty. It had no difficulty in expressing such intention clearly in the Act relating to the practice of medicine, passed at the same session. Public Acts of 1907, p. 640, Chap. 82, § 1. In that Act it is expressly provided that "no person shall, for compensation, gain or reward, received or expected, treat, operate, or prescribe for any injury, deformity, ailment, or disease, actual or imaginary, of another person, . . . until he has obtained such a certificate of registration" as the statute provides for. There is no such clear and explicit language as this to support the public prosecutor's contention that this Act makes it a crime to perform a dental operation without a license. Had the legislature anticipated the case now before the court, it perhaps would have employed in this statute expressions prohibitory of the act which this defendant

The State *v.* Faatz.

is being prosecuted for. Such expressions, however, do not appear there, and this statute therefore has not been violated. The information does not charge any offense under the Act in question, hence the demurrer should have been sustained upon that ground.

There was error in the charge of the court heretofore quoted. There was also error in the refusal of the court to charge as requested, and as hereinbefore set forth.

The motion in arrest of judgment should have been granted.

In view of the disposition which we make of this case upon other grounds, we do not deem it necessary to pass upon the question of the constitutionality of the law.

The claimed error of the court in denying the motion to set aside the verdict as against evidence we decline to consider, as there appears to have been no appeal from this denial. The defendant appeals from the judgment of the court, but not from this denial as our statute (General Statutes, § 805) requires. He sets up the refusal as one of the reasons of appeal from the judgment, but does so without specifically appealing from the denial. "Whenever a trial court now denies the motion and enters judgment on the verdict, an appeal from such denial can and should be taken as part of the appeal, if any, from the judgment." *McCusker* v. *Spier*, 72 Conn. 628, 632, 45 Atl. 1011.

The judgment is reversed, and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.