STATE BAR ASSOCIATION OF CONNECTICUT ET AL. *v.*
THE CONNECTICUT BANK AND TRUST COMPANY

SUPERIOR COURT          HARTFORD COUNTY          FILE No. 107312

STATE BAR ASSOCIATION OF CONNECTICUT ET AL. *v.*
HARTFORD NATIONAL BANK AND TRUST COMPANY

SUPERIOR COURT          HARTFORD COUNTY          FILE No. 107313

Memorandum filed July 21, 1958

*Wesley A. Sturges* and *Fleming James, Jr.,* both of New Haven, *Wallace R. Burke,* of Hartford, and *Hadleigh H. Howd,* of Winsted, for the plaintiffs.

*Gross, Hyde & Williams* and *Day, Berry & Howard,* both of Hartford, for the defendants.

BOGDANSKI, J. These two appeals were combined by order of the trial court pursuant to the provisions of § 382 of the Practice Book. The plaintiffs alleged in each complaint that the defendant corporation named therein was, and for a long time had been, unlawfully practicing law in this state in violation of the common law and §§ 7638 and 7641 of the General Statutes and in contempt of court. They sought injunctions restraining each defendant from engaging in any and all the acts and practices alleged and judgments declaring whether those acts and practices, singly or in combination, constituted the unlawful practice of law and violations of the statutes. The trial court found all the issues except one for the defendant in each case. The plaintiffs appealed from these judgments to the Supreme Court of Errors.

The Supreme Court in its decision (145 Conn. 222, 236) found: "Each defendant, acting through its employees, in disseminating general information concerning the application, scope and effect of various laws and in reviewing wills and trust agreements was acting primarily for itself in obtaining or holding trust department customers. Those acts and practices did not constitute the practice of law. In performing other acts and in carrying on other practices, it was not acting primarily for itself; it was administering and settling the affairs of estates. The mere fact that it was not acting for itself in performing an act or acts in or out of court does not, however, compel the conclusion that such performance constituted the practice of law. As stated above, the decisive question is whether the acts performed were such as are 'commonly understood to be the practice of law.' . . . The decision by a trust department officer or employee that no uncertain or unclear legal issue is involved, that no controversy is likely to arise and that independent outside counsel should not be retained would not legalize the performance of the acts by a trust officer or employee. The court erred in concluding as a matter of law that the drawing up of all of the various types of instruments drafted and composed by each defendant's trust department employees could not and consequently did not constitute the unlawful practice of law and also in concluding as a matter of law that each defendant's appearance and representation at probate court hearings by attorneys who were salaried employees could not and did not constitute the unlawful practice of law.

"Upon the basis of the facts found, we cannot say that the court erred in concluding that each defendant, acting by and through its trust department employees, lawyers or laymen, in preparing tax returns

and dealing with and appearing before state and federal authorities in connection with taxes claimed to be due from estates administered by it did not engage in the unlawful practice of law. We do not hesitate to say, however, that if the record indicated that either the preparation of the tax returns or the matters dealt with involved tax law problems of a type such that their solution would be 'commonly understood to be the practice of law,' we would hold that the acts performed constituted the unlawful practice of law.

"There is error in part in both cases, the judgments are set aside and the cases are remanded with direction to render judgments as on file except as modified to accord with this opinion.

"In this opinion the other judges concurred."

At the short calendar hearing on the motion for judgment in accordance with the opinion of the Supreme Court, the defendants offered a proposed form of judgment.[1]

[1] "JUDGMENT

This action by writ and complaint dated September 26, 1956, claiming an injunction and a declaratory judgment determining whether certain acts and practices of the defendant constitute the unlawful practice of law came to this court on the first Tuesday of November, 1956 and thence to February 19, 1957, when the parties appeared and were at issue, as on file.

Thereafter on April 15, 1957, the court rendered judgment as on file.

Thereafter on April 23, 1957, the plaintiffs appealed to the Supreme Court of Errors and that court having heard the parties rendered judgment on April 15, 1958 and held error in part and ordered that the judgment of this court appealed from be set aside and the case remanded to this court with direction to render judgment as on file except as modified to accord with the opinion of the Supreme Court of Errors.

Thereafter this action came to the present time when the court, having heard the parties, finds the issues for the defendant except that the drafting or composing, by its trust department employees, of instruments when such drafting or composing is commonly understood to be the practice of law and except that appearance and representation for the defendant, in probate court proceedings where a

On page 62 of the printed record (A-362 Rec. & Briefs, back of p. 466), the trial court in its finding found the following facts: "(22) There are a great many legal problems, many of them of a complex nature, which arise in the fiduciary administration of decedents' estates. The following are illustrative: in the application for probate of a will, the questions of domicil and who are the heirs-at-law; in the inventory and appraisal of the estate, the problems of valuation of closely held corporations, of interests such as leasehold estates and remainder interests, what dividends and accrued interest are included; to whom the household furniture belongs; in the return of claims, which ones are properly presented, what are the priorities, questions relating to statutes of limitation; the report to the State on transfers other than by will or intestacy . . .

---

hearing is required by law or a hearing is had though not required by law, by employees of the defendant where such appearance and representation are commonly understood to be the practice of law, constitute the illegal practice of law.

Whereupon it is ordered, adjudged and decreed that the defendant be and it hereby is enjoined, under penalty of Ten Thousand Dollars ($10,000) from drafting or composing, by its trust department employees, of instruments when such drafting or composing is commonly understood to be the practice of law and from appearing and being represented, except by a member of the bar of this state who is not a salaried employee of the defendant, in any proceeding in the Probate Courts where a hearing is required by law or a hearing is had though not required by law, where such appearance and representation are commonly understood to be the practice of law.

And it is further adjudged and decreed as a declaratory judgment of the rights of the parties:

In giving general information to customers and prospective customers on such matters as federal and state tax laws, inter vivos and testamentary trusts, wills, etc., as well as reviewing existing wills, where the defendant gives no specific advice, charges no fee, and urges the customers to consult their own attorneys for advice on their specific situations and have them draw any necessary instruments, the defendant is not engaged in the illegal practice of law but is performing these acts as incident to its authorized fiduciary business.

In preparing and filing in the Probate Courts the various applications, petitions, accounts, inventories and distributions pertaining

requires important legal determinations, including that of whether a transfer is made in contemplation of death or is intended to take effect in possession or enjoyment upon death, and whether or not to concede the taxability of the items involved; the determination of what are allowable deductions in the succession tax, and the computation of tax; the federal estate tax returns contain 19 schedules, each of which has its legal problems, such as schedules of jointly owned property, of marital deductions, of transfers prior to death; the preliminary and final accounts of the fiduciary present legal problems; the distribution of estates presents problems such as interest, payment in kind or in cash. There are few if any estates or trusts that do not have some problems of a legal nature.

"(23)  There is a considerable body of case law built up around the succession and transfer tax statutes of this State.  Trust officers who may or may

to estates and trusts, conservatorships and guardianships, the defendant is performing the ordinary and incidental services relative to estates and trusts assumed by it under the statutes authorizing it to act as fiduciary and is not engaged in the illegal practice of law and these acts may be performed by lay employees as well as lawyer employees unless such acts are such as are commonly understood to be the practice of law.

The defendant should appear and be represented in proceedings in the Probate Courts where a hearing is required by law or a hearing is had though not required by law by a member of the bar who is not a salaried employee of the defendant when such appearance and representation are commonly understood to be the practice of law.

The work of preparing and filing tax returns for the defendant as fiduciary and dealing with, and appearing before, state and federal tax authorities in connection with taxes claimed to be due from the defendant as fiduciary may properly be done by regular employees of the defendant, either lawyers or laymen, and the practices of the defendant as to tax matters do not constitute the illegal practice of law.

The practice of the defendant in carrying on all these activities through lay or lawyer employees except as noted above does not constitute the illegal practice of law or a violation of statute.

It is further adjudged and decreed that no costs shall be taxed in favor of either party."

not be attorneys, have frequent meetings with tax attorneys representing the State to compromise claims arising out of these laws. The questions which arise are more difficult to solve than title searching problems. At these conferences, it is seldom that independent outside counsel are present. Where the claim is contested in the Probate Court, however, during 1956 the defendants have consistently been represented by outside independent counsel. On questions of taxability, it is a common thing for the trust officer to make decisions without consulting an attorney."

These aforementioned facts found have been unchallenged, indeed the Supreme Court in its decision recited them almost verbatim.

It should be borne in mind that reference to § 7641 of the General Statutes, upon which these petitions were based, will make clear that these have not been ordinary adversary proceedings. Instead, they were conceived and prosecuted by the plaintiffs in furtherance of the administration and enforcement of the rules of the Superior Court of this state regulating the practice of law.

There is a well-known maxim about the framing of equity decrees, which is what is involved here—that an injunctive decree must not be vague but must be specific; that such a decree should tell a defendant precisely what he is to do and what he is not to do, so that there will not have to be constant litigation with respect to the interpretation of the decree.

One of the weaknesses of the judgments proposed by the defendants is that they contain such a vagueness; that they in effect amount to an injunction not to do those things which are commonly understood to be the practice of law. While it is true that that was the guiding principle in the Supreme Court

opinion, it cannot be said that it should be the language of the decree. Such a principle would be too broad to be the language of the decree, for the question would then arise as to who is to decide what is commonly understood to be the practice of law. With respect to this question, it is to be noted that the Supreme Court opinion has specifically stated that that decision is not to be made by the bank officers, as it had been in the past.

The cases were tried before *Phillips, J.* There was evidence before him from which he had specifically made a finding of fact (paragraphs 22 and 23 of the finding), already recited in this memorandum. The Supreme Court had no quarrel with this finding of fact. In fact in its opinion it recited this finding of fact almost verbatim. It would appear, then, that this finding of fact is to be interpreted as a listing of those acts and practices in or out of court which are legal problems, that is to say that they are acts and practices which are commonly understood to be the practice of law.

It follows then that what was reversed by the Supreme Court was the conclusions of law, not the finding of fact. The trial court did not find that these acts did not constitute the practice of law or were not capable of being practiced. What the trial court found, and this was stated specifically in its memorandum of decision, was that the defendants in performing these acts as enumerated in the aforementioned finding were acting primarily for themselves in the proper action of their function as fiduciaries and therefore it was not the improper practice of law, because they were simply representing themselves in connection with these admittedly legal problems.

What the Supreme Court reversed then, was this theory of the trial court. It held that in carrying out fiduciary functions the defendant banks were

acting for others. Therefore, those legal problems which they might engage in doing if they were acting for themselves they might not practice for others.

Furthermore, the Supreme Court made a distinction between the drafting and filing of instruments and appearances in Probate Courts and at other such hearings on the one hand, all of which are the practice of law because all involve these legal problems, and the filing of returns, that is tax returns.

As to the filing of tax returns, the Supreme Court in its opinion did make a distinct reference. It said (145 Conn. 222, 237) that not all the filing of tax returns is the practice of law, but it went on to say that the filing of tax returns that involve what is commonly understood to be the practice of law is the practice of law, and in its opinion it had already defined, as the practice of law, in line with the trial court's finding of fact, the filing of tax returns and the representation before tax authorities when it involves the kinds of problems which are commonly known and understood to be the practice of law, that is, when it involves tax law problems of a type such that their solution would be commonly understood to be the practice of law.

The defendants have argued that these things (tax returns etc.) are the practice of law only when they are hard. That is not what the Supreme Court said. In *Grievance Committee* v. *Payne,* 128 Conn. 325, 330, the court did not make a distinction between searching easy titles and searching hard titles. It said that the town clerk is not to search titles, period; that all searching of titles is the practice of law. That is a legal problem, just as those things listed in the finding are legal problems, whether they are hard or easy. The test is the legal nature of the problem.

To conclude, the Supreme Court opinion had reversed the conclusions of law of the trial court in all but one instance. In the final paragraphs of the opinion, it addressed itself to the conclusions of law in the trial court's finding. The first one is that the defendants were acting for themselves. The Supreme Court said (p. 236): "In performing [certain] acts and in carrying on [certain] practices, [each defendant] was not acting primarily for itself." This reversed the legal basis of the trial court's reasoning. This was the gravamen of the matter, not the finding of fact but the trial court's legal theory. It went on to say that when the trial court made the conclusion, the legal conclusion, that drawing up of these papers was not the practice of law, the court erred; that the trial court was right in characterizing them as legal problems in the finding. That is not challenged, but when the trial court concluded that they do not constitute the illegal practice of law because the banks were only doing these things for themselves and not others, that is where the court found error.

Wherefore the entry of judgments in both cases shall take the following form:

### JUDGMENT

This action by writ and complaint dated September 26, 1956, claiming an injunction and a declaratory judgment determining whether certain acts and practices of the defendant constitute the unlawful practice of law, came to this court on the First Tuesday of November, 1956, and thence to November 30, 1956, when the court ordered that notice of the pendency of this action be given to banks and trust companies acting or authorized to act as fiduciaries in the state of Connecticut by publication of said notice in the "American Banker," which order was duly complied with, and thence

to February 19, 1957, when the parties appeared and were at issue to the court, and thence to April 15, 1957, when judgment was rendered finding certain issues for the plaintiffs and certain issues for the defendant, and thence to April 23, 1957, when the plaintiffs appealed from said judgment to the Supreme Court of Errors, and thence to April 15, 1958, when the Supreme Court of Errors found error in part in said judgment and said judgment was set aside and the cause remanded to this court with direction to enter judgment as on file except as modified to accord with the opinion of the Supreme Court of Errors, all as appears on file in said cause.

The court, having heard the parties, finds the issues as follows:

That the defendant, acting through its officers or employees, in giving general information to customers and prospective customers on such matters as federal and state tax laws, inter-vivos and testamentary trusts, wills, etc., as well as in reviewing existing wills and trust agreements, where the defendant gives no specific advice, charges no fee, and urges customers to consult their own attorneys for advice on their specific situations and have them draw any necessary documents, is acting primarily for itself in obtaining and holding trust department customers and is not engaging in the unlawful practice of law.

That the defendant, acting by and through its officers or employees, whether lawyers or laymen, in preparing tax returns and dealing with and appearing before state and federal authorities in connection with taxes claimed to be due from estates administered by it, is not engaging in the unlawful practice of law, provided that in so doing it does not engage in any of the acts and practices hereinafter declared to be commonly understood to be the prac-

tice of law. [Reporter's Note: For the description of the acts found to be the unlawful practice of law, the reader is referred to the terms of the injunction, which follows immediately.]

.        .        .        .        .

Whereupon it is adjudged, ordered and decreed that the defendant and its officers, employees, servants and agents be and are forever enjoined, under a penalty of Ten Thousand Dollars ($10,000), from preparing and filing documents in any Probate Court or with the state tax department or with the internal revenue service, or appearing or being represented in any Probate Court or before the state tax department or any representative thereof or before the internal revenue service or any representative thereof, on any matter with respect to which a hearing is required by law or a hearing is had though not required by law, or appearing or being represented in any proceeding, conference or negotiation wherein the legal rights, liabilities or interests of any estate or trust or of any parties interested therein are to be adjudicated, defined, determined, compromised or settled by any decree, judgment, order or ruling of any Probate Court or of the state tax department or of the internal revenue service—including, without limiting the intent or scope of the foregoing, the following matters: (1) the admission of a will to probate; (2) the determination of domicil and heirs at law and all jurisdictional questions arising therefrom; (3) widows' allowances; (4) applications for permission to sell the assets of fiduciary estates; (5) the valuation of closely held corporations and of interests such as leasehold estates and remainder interests; (6) the determination of what dividends and accrued interest shall be included in the inventory of a fiduciary estate; (7) the determination of the ownership of household property; (8) the compromise

of claims for and against a fiduciary estate; (9) the determination of whether or not claims against an estate have been properly presented, of questions relating to statutes of limitation, and what, if any, priorities may exist in the order of payment of claims against insolvent estates; (10) the determination of whether or not transfers were made in contemplation of death or were intended to take effect in possession or enjoyment at or after death and whether or not to concede the taxability of the items involved therein; (11) the determination of allowable deductions under the succession tax law and what items, if any, ought to be included in the computation of the tax liability; (12) the completion of federal estate tax returns involving jointly owned property, marital deductions and transfers prior to death; (13) the preparation and filing of preliminary and final accounts; (14) the making of the necessary calculations in the distribution of estates —unless represented by a member of the bar of this state in good standing who is not an officer, employee, servant or agent of said defendant; provided only, that no provision herein relating to the defendant's appearance or practice before the internal revenue service shall be effective in so far as the laws of the United States require or permit otherwise.

And it is further adjudged and decreed as a declaratory judgment of the rights of the parties: [Reporter's Note: The declaration of the rights of the parties is not printed, since it repeats verbatim, from the foregoing portions of the judgment, the catalogue of the acts which are, and those which are not, the unlawful practice of law.]