## STATEWIDE GRIEVANCE COMMITTEE
### *v.* GERARD B. PATTON ET AL.
### (15445)

Callahan, C. J., and Borden, Palmer, McDonald and Peters, Js.

Argued September 27—officially released November 12, 1996

*John R. Williams*, for the appellant (named defendant).

*Maureen A. Horgan*, assistant bar counsel, for the appellee (plaintiff).

*James O. Gaston* and *Sid M. Miller* filed a brief for the Connecticut Bar Association as amicus curiae.

MCDONALD, J. The plaintiff, the statewide grievance committee, brought this action seeking an injunction to restrain the defendant Gerard Patton[1] from the unauthorized practice of law in violation of General Statutes § 51-88.[2] The trial court granted the plaintiff's request for injunctive relief and rendered judgment ordering the defendant to restrain from engaging in further acts constituting the practice of law. The defendant appealed from the judgment of the trial court to the

---

[1] The plaintiff named in its petition additional defendants who are not involved in this appeal. Throughout this opinion we will refer to Gerard Patton as the defendant.

[2] General Statutes § 51-88 provides in relevant part: "Practice of law by persons not attorneys. (a) A person who has not been admitted as an attorney under the provisions of section 51-80 shall not: (1) Practice law or appear as an attorney-at-law for another, in any court of record in this state, (2) make it a business to practice law, or appear as an attorney-at-law for another in any such court, (3) make it a business to solicit employment for an attorney-at-law, (4) hold himself out to the public as being entitled to practice law, (5) assume to be an attorney-at-law, (6) assume, use or advertise the title of lawyer, attorney and counselor-at-law, attorney-at-law, counselor-at-law, attorney, counselor, attorney and counselor, or an equivalent term, in such manner as to convey the impression that he is a legal practitioner of law, or (7) advertise that he, either alone or with others, owns, conducts or maintains a law office, or office or place of business of any kind for the practice of law."

Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, the defendant claims that the trial court improperly granted the plaintiff's request for injunctive relief because: (1) his conduct did not constitute the practice of law; and (2) § 51-88 is void for vagueness and is overly broad in that it infringes on conduct protected by the first amendment to the United States constitution. We affirm the judgment of the trial court.

The facts found by the trial court are not disputed. The defendant has not been admitted as a member of the bar of the state of Connecticut. In January, 1992, the defendant began doing business in Milford as Doc-U-Prep of New England. The defendant placed the following advertisement in a newspaper, The Milford Citizen: "ANNOUNCING DOC-U-PREP OF NEW ENGLAND, The Non Lawyer Legal Document Center, HELPING PEOPLE WHO CAN'T AFFORD THE HIGH COST OF ROUTINE LEGAL DOCUMENT PREPARATION, We Will Do Your Wills $45.00, Corporation $250.00, Divorce (uncontested) $125.00, Living Trust $499.00, Bankruptcy (chapter 7) $279.00, Name Change $99.00 and many more documents, all at low cost. . . . Affiliated with Clarke & Patton, Inc., Jerry Patton, President. . . ." The defendant placed a similar advertisement in a second newspaper, the Bridgeport Post.

In conducting his business, the defendant gave his customers a form on which to indicate the type of service they requested. The form stated: "DOC-U-PREP of NEW ENGLAND INC. prepares legal documents for non-lawyers to file in their own uncontested legal actions." The defendant required his customers to sign both the form and a disclaimer, after which he presented his customers with a questionnaire pertaining to the type of service requested. The defendant sent the cus-

tomers' completed questionnaires to Doc-U-Prep of New England in Taunton, Massachusetts. Pursuant to a franchise agreement, Doc-U-Prep of New England completed the legal documents with the information contained in those questionnaires. Doc-U-Prep of New England then returned the completed legal documents to the defendant, who delivered them to his customers. For these services, the customers paid the defendant a fee.

Here, "the decisive question is whether the acts performed were such as are 'commonly understood to be the practice of law.'" *State Bar Assn.* v. *Connecticut Bank & Trust Co.*, 145 Conn. 222, 236, 140 A.2d 863 (1958), quoting *Grievance Committee* v. *Payne*, 128 Conn. 325, 330, 22 A.2d 623 (1941). "Attempts to define the practice of law have not been particularly successful. The reason for this is the broad field covered. The more practical approach is to consider each state of facts and determine whether it falls within the fair intendment of the term." *Grievance Committee* v. *Payne*, supra, 329.

As to the state of facts, this court has consistently held that the preparation of legal documents is commonly understood to be the practice of law. *Grievance Committee* v. *Dacey*, 154 Conn. 129, 140–44, 229 A.2d 339 (1966), appeal dismissed, 386 U.S. 683, 87 S. Ct. 1325, 18 L. Ed. 2d 404 (1967); *State Bar Assn.* v. *Connecticut Bank & Trust Co.*, supra, 145 Conn. 222; *Grievance Committee* v. *Payne*, supra, 128 Conn. 325; see also *Monroe* v. *Horwitch*, 820 F. Sup. 682 (D. Conn. 1993), aff'd, 19 F.3d 9 (2d Cir. 1994). "The practice of law consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces the giving of legal advice on a variety of subjects and *the preparation of legal instruments covering an extensive field.* Although such transactions have no direct connection with court pro-

ceedings, they are always subject to subsequent involvement in litigation. They require in many aspects a high degree of legal skill and great capacity for adaptation to difficult and complex situations." (Emphasis added.) *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* supra, 234–35.

The defendant is not trained in the law as an attorney. The preparation of legal documents involves "difficult or doubtful legal questions . . . which, to safeguard the public, reasonably demand the application of a trained legal mind." (Internal quotation marks omitted.) *Baron* v. *Los Angeles,* 2 Cal. 3d 535, 543, 469 P.2d 353, 86 Cal. Rptr. 673 (1970). "It is of importance to the welfare of the public that these manifold customary functions [of practicing law] be performed by persons possessed of adequate learning and skill and of sound moral character, acting at all times under the heavy trust obligation to clients which rests upon all attorneys." *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* supra, 145 Conn. 235. We hold that the defendant's preparation of legal documents, therefore, violated § 51-88, which prohibits the practice of law by one not admitted as an attorney.

Finally, we conclude that the defendant's challenges to the constitutionality of § 51-88, either on its face or as applied, have no merit. The defendant's activities are commonly understood to be the practice of law, and he advertised in bold print that he prepared "legal documents." Section 51-88 is not void for vagueness or overly broad so as to infringe on the first amendment rights of the defendant. See *Grievance Committee* v. *Dacey,* supra, 154 Conn. 144–49; see also *Monroe* v. *Horwitch,* supra, 820 F. Sup. 686–87. While "[a]n activity on the 'outerboundaries' of the 'practice of law' might be impermissibly vague . . . [the] '[p]reparation' of legal documents falls squarely within the boundaries." *Monroe* v. *Horwitch,* supra, 686.

The judgment is affirmed.

In this opinion the other justices concurred.